### In the Matter of Paula and Mary Barber
*[Cite as 3 AOA 111]*

*Case No. 89-CA-23*
*Knox County, (5th)*
*Decided May 16, 1990*

*Jennifer E. Devillers, 205 East Chestnut Street, Mount Vernon, Ohio 43050, for Appellants.*

*Michael D. Schlemmer, 118 East Gambier Street, Mount Vernon, Ohio, 43050; D. Derk Demaree, Guardian Ad Litem, 300 West Vine Street, Mount Vernon, Ohio 43050, for Appellees.*

MILLIGAN, P.J.

In December 1986, Paula Barber, DOB 8/13/82, and Mary Barber, DOB 7/27/84, were found by the Knox County Juvenile Court to be dependent children.

On July 6, 1989, the court approved findings of fact, following hearings, which included a grant of permanent custody to the Children Services Unit of Knox County Department of Human Services and terminated parental rights. The parents appeal, assigning a single error:

"THE JUDGMENT THAT THE BEST INTERESTS OF PAULA BARER AND MARY BARBER WILL BE PROVIDED BY TAKING PERMANENT CUSTODY FROM THE PAR-

ENTS, AS THEY CANNOT AND SHOULD NOT BE RETURNED TO THEIR PARENTS WITHIN A REASONABLE PERIOD OF TIME, AND THAT GRANTING PERMANENT CUSTODY OF SAID CHILDREN TO COMPLAINT APPELLEE AND TERMINATING THE PARENTAL RIGHTS OF RESPONDENT-APPELLANTS IS IN THE BEST INTEREST OF THE SAID CHILDREN, HAS NOT BEEN PROVEN BY CLEAR AND CONVINCING EVIDENCE, AND IS THEREFORE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

The trial court made extensive findings of fact and conclusions of law. In as much as the fact findings are not essentially challenged, we replicate and incorporate the same.

The challenge of the parents is:

"(1) there was a failure of good faith effort to reunite the family;

"(2) the parents made a substantial effort to comply with the reunification plan;

"(3) 'Rodney Barber, with brief, decisive planning could assume primary responsibility and should be allowed to as soon as possible.'"

Effective January 1, 1989, the procedure for termination of parental rights, vis-a-vis the respective responsibility of the government and parents was substantially changed. 142 v.s. 89, effective 1/1/89. This motion for permanent custody was filed in March, 1989, and the revised provisions of R.C. 2151.414 apply.

The substantive requirements for termination of parental rights of a child previously found dependent now provide:

"(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing..by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

"(1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;

"* * *

"(C) In making the determinations required by this section..a court shall not consider the effect the granting of permanent custody to the agency would have upon any parent of the child..

"If the court grants permanent custody of a child to a movant under this division, the court, upon the request of any party, shall file a written opinion setting fourth its findings of fact and conclusions of law in relation to the proceeding. The court shall not deny an agency's motion for permanent custody solely because the agency failed to implement any particular aspect of the child's case plan.

"(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (a)(4) of section 2151.353 [2151.35.3] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

"(1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption;

"(2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;

"(3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;

"(4) The custodial history of the child;

"(5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.

"(E) In determining at a hearing held pursuant to division (A) of this section..whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section..that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents:

"(1) Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical,

psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

"(2) The severe and chronic mental illness, severe and chronic emotional illness, severe mental retardation, severe physical disability, or chemical dependency of the parent makes the parent unable to provide an adequate permanent home for the child at the present time and in the foreseeable future:

"(3) The parent committed any abuse * * * against the child, caused the child to suffer any neglect * * * or allowed the child to suffer any neglect..between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

"(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

"(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;

"(6) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing;

"(7) The parent is repeatedly incarcerated and the repeated incarceration prevents the parent from providing care for the child;

"(8) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child ·from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

"(F) The parents of a child for whom the court has issued an order granting permanent custody pursuant to this section, upon the issuance of the order, cease to be parties to the action * * *"

R.C. 2151.414, effective January 1, 1989.

In light of the revised provisions of law, the first two arguments of the appellants are unavailing.

The critical question then becomes whether an order of termination of parental rights is appropriate as to the father. (The evidence abundantly supports the continuing inability of the mother, for a cadre of reasons, to care to these children.)

Fact Finding 8 becomes the central focus.

The suggestion at the oral hearing that the father, who has made progress in dealing with his problems, has a choice of either (1) not working and staying home with the children to monitor the care in the home, or (2) separating from the mother and caring independently for the children, strikes this court as crass.

The question, rather, is whether the trial court abused its broad discretion in concluding that the children "cannot and should not be returned to their parents within a reasonable period of time and would benefit from a prompt an legally secure permanent placement." Conclusion of Law No. 22.

We have studied the entire transcript of proceedings, together with the report of the guardian *ad litem*. This another of those cases that tug on the heartstrings imposing upon the trial judge (and upon the appellate court in review) the virtually impossible task of balancing terribly important interests consistent with the provisions of Ohio statutes. The right *and responsibility* of parents to custody, control, and nurturing of their own children is fundamental and deserving of high judicial recognition. Of even more enduring value, is the imperative that children receive the components of custody (care, support, discipline, nurturing, reliability, dependency). The impact on this family and upon society will linger more profoundly, in the long run, in the lives of the children.

Here, we have a family that has lived with alcoholism and domestic violence for most of the life of these children. When the government intervened in their lives, it did what it is supposed to do -- provide social services in an effort to preserve the family unit. Old patterns do not change easily, and here there have been steps forward and steps backward over the years. Most recently when the children were removed, the best interests of the children were thought to be served by severely limiting visitation. Their sense of permanency has been diminished by the reality of multiple foster home placements, encouraged or caused, in large part, by the failure of the parents to act responsibly toward the children while in temporary custody with the Department of Human Services foster parents.

At the time of the hearing there were two important streams of development converging: It is apparent from the testimony of the social worker and the father that he has made signifi-

cant progress in dealing with his admitted alcoholism. He will need additional help to work on his problem of temper and its control. He has a clear understanding of the limitations of the mother as relates to her ability to provide day in, day out care for the children. He even sees her health problems exacerbated by the presence of the children. He enjoys working and is looking for a job, but is willing to assume the primary caretaker role as a condition of receiving custody of his children. On the other hand, the children, now aged 8 and 6, finally appear to be situated in a foster home that would also become the adoptive home. They now have the opportunity to look forward to stability, permanence, and growth within a nurturing family structure.

Complicating this dichotomy is the plea of the parents that they be given "another six months" which will be necessary to get their affairs in order so as to permanently care for their children.

The guardian *ad litem* took his task seriously. His rationale for concluding that the children not be returned to the natural parents is supported by logical rationale:

"I recommend that the subject children, Paula Barber and Mary Barber, not be returned to their natural parents, but rather be placed for adoption with a suitable couple. This recommendation is made for the following reasons among others:

"1) neither parent is employed;

"2) both parents lack sufficient parenting skills;

"3) the parents have a history of domestic violence;

"4) both children have suffered neglect;

"5) both parents are recovering alcoholics;

"6) Mrs. Barber has a history of severe physical illness;

"7) the Barbers lack financial resources and stability;

"8) both parents have failed to complete parenting classes or other commitments;

"9) the Barbers have failed to demonstrate that they can provide the stability and permanency that Paula and Mary Barber so desperately need;

"10) Paula and Mary have been negatively affected by the presence of domestic violence and substance abuse in the Barber home;

"11) the Barbers failed to meet Paula and Mary's physical and emotional needs."

This case has been pending for over two (2) years. During that period of time, Paula and Mary's lives have been placed on hold. The Barbers have demonstrated that they are not ready to take care of Paula and Mary. Paula and Mary's behavior has demonstrated that they cannot wait for the permanency and stability any longer. I feel that my recommendation takes into account not only my own observations, but also the testimony of Rick Stutzman, Ph.D., Diane Schweitzer, caseworker, and also the testimony of Rod Barber and Phyllis Barber themselves.

Report of Sonja J. Butler, guardian *ad litem*.

In cases such as this, it is over-tempting to substitute our discretion for that of the trial judge. Nevertheless, we are constrained to honor his exercise of discretion in this case. Although we have the entire record before us, he has the additional advantage of having seen and observed the demeanor, behavior, candor, or lack thereof, of the witnesses during this hearing; he has monitored the progress of this case over a period of years. He is in far the better position to make the difficult ultimate choice than this court.

For the above reasons, we overrule the single assignment of error and affirm the judgment of the Knox County Juvenile Court.

*Judgment affirmed.*

PUTMAN, P.J., and HOFFMAN, J., concur.